Norris *v.* Morrill.

# NORRIS *v.* MORRILL.

When evidence of a parol letting of real estate for a year without any express agreement as to the time when rent should be paid, is admitted to prove that time, but not to show the conveyance of an interest in lands, it is no objection to such admission that the parol agreement was inoperative.

When it is necessary to prove a demand of rent, and it appears that rent bills were presented to the tenant, the person presenting them, being a competent witness, may testify what his intention and understanding were in presenting them.

In trespass *quare clausum*, where the malice of the defendant may be ground of exemplary damages, he, being a competent witness, may testify what his motive and purpose were in doing the acts complained of.

A demand of rent, when made, may be waived. A mutual understanding on the part of landlord and tenant that a demand is waived, constitutes a waiver ; and evidence of long delay to give notice to quit, and payment of rent, is admissible to show such understanding.

TRESPASS, *quare clausum.* It appeared that prior to September, 1856, the *locus in quo* was the soil and freehold of the defendant Morrill and one Howison, and the plaintiff

on that day entered into possession of the same as their tenant, without any written lease from the plaintiff, contending that the rent was to be paid at the end of one year, and the defendants that it was to be paid monthly. The plaintiff remained in possession until the 25th day of May, 1857, the time of the alleged trespass. It appeared that the arrangement upon which the plaintiff entered in possession of the premises, a livery stable, was made between the defendant Morrill and one Dodge as agent of the plaintiff. And the plaintiff offered evidence tending to prove that the agreement was for a letting of the stable for one year, but without any express agreement as to the time when the rent should be paid. To which evidence the defendants excepted, on the ground that the oral agreement would be inoperative. But the court admitted the evidence as bearing upon the question when the rent was to be paid, but not with a view to prove a lease for a year; to which the defendants excepted.

It appeared that the plaintiff paid the rent for the months of August, September and October, at $12.50 per month, in separate bills, the month of August and part of September belonging originally to Dodge, the previous tenant, to pay, and the plaintiff having agreed with Dodge to pay it for him.

The plaintiff testified that he paid the November rent about December first, at same rate, but this the defendant Morrill denied, and testified that he presented to the plaintiff the bills for each month's rent, from October to February inclusive, at or near the close of each month, about the first of the month succeeding, unless with the exception of a single month, and demanded payment of the same; and he testified that on the third day of March, 1857, at the plaintiff's counting-room, but not on the premises in question, he asked the plaintiff for the rent in arrear, presented all the bills made out monthly, and the plaintiff paid him $24, and said he had not enough to pay

all, but would pay the rest in a few days. On the other hand, the plaintiff testified that he paid the rent for November, and that the defendant did not call upon him for rent at any time after, except that on the 3d of March, as Morrill was about starting for Boston, early in the morning, he called at his counting-room and said he was going to Boston and wanted some money to use, and would like some of him, the plaintiff; that he, the plaintiff, told him he did not know as he had enough to pay all he owed him, and that Morrill mentioned he might pay what he had, and he could get along. He let him have all he had, which was $24, and Morrill said he guessed he could get along with it.

It appeared that after the 3d of March no call was ·made upon the plaintiff for rent until about May 1, when it appeared that Morrill put into the hands of one Emerson, as attorney for Morrill & Howison, a bill of three or four months' rent, at $12.50 per month, with a credit for the said $24, and also two bills for the rent of March and April, at the rate of $200 per year, and the evidence tended to show that, as such attorney, Emerson soon after that, and before the 12th day of May, called upon the plaintiff, exhibited the bills, and in some form desired him to pay them ; and also that he again called upon him on the 12th of May, and again had the bills, and presented them for payment, but that the bills were not paid. The evidence of the defendants also tended to prove that the plaintiff did not object to paying monthly, but did object that the two bills at $200 per year were too large, but said he would pay at $12.50 per month, some time, or soon, and also that the plaintiff said to Emerson, " If Morrill wants his rent why does he not come for it himself?" to which Emerson replied that Morrill said he had called for it a good many times, stating the number, which the plaintiff denied, saying that he had not called the number of times stated, but a less number. On the other hand, the plaintiff testified

that Emerson made no demand of rent. And it also appeared that on the 12th day of May, Emerson gave the plaintiff notice in writing to quit on the 20th of that month, and that at some time after the 20th of May the plaintiff paid to Emerson the rent up to that time at the rate of $150 per year, which was received by him, but with no assent to the continuation of the tenancy. Upon the subject of a demand of rent by Emerson in May, as before stated, he testified that he could not tell what he said when he presented the bills; thinks he did not ask him to pay, or say, "Will you pay?" when he showed him the bills; and a question arose whether or not Emerson made any demand; and after Emerson had testified on his direct examination on this point, and did on the cross-examination, the plaintiff proposed to ask him what his purpose was in presenting the bills; but the court ruled that the defendants might show what Emerson said and did, but that the inquiry as to his purpose and intent was not competent; to which ruling the defendants excepted.

Morrill, one of the defendants, was called as a witness for the defendants, and after having stated what he had done at the stable at the time of the alleged trespass, the defendants' counsel proposed to ask him if he went there with any intent to do any injury; but this was excluded by the court, subject to exception, on the ground that his purpose was to be gathered from his acts.

The court instructed that a demand might, under the statute, be good without being made on the premises, or on the precise day it became due, and also instructed them that if they found the rent to be due and unpaid upon demand, the right of the landlord to terminate the tenancy would not be affected by the payment and reception of the rent by Emerson, before stated, but that the landlord might afterward waive any such demand of rent, and renew the former relation of landlord and tenant, by neglecting to give notice to quit and recognizing and treating

Norris v. Morrill.

the tenancy as still subsisting, and that the jury should inquire whether any demand, made before March 3d or at that time, was afterward waived and the tenancy continued; and that as evidence bearing upon that question they might consider the lapse of time without notice to quit, the subsequent payment and reception of rent other than that to Emerson, the presentation of bills for rent by the landlord, and all the circumstances in the case, including the subsequent demand in May, tending to show that the parties treated and recognized the tenancy as still subsisting.

The defendants requested the court to charge the jury that if a demand was made March 3d or before, there was no evidence of any waiver of the right of the landlord arising from the neglect to pay on demand, and that a mere neglect to give notice to quit is not a waiver. But the court declined so to instruct the jury beyond the instructions already stated; to which the defendants excepted, and moved that the verdict be set aside for error in the rulings and instructions aforesaid.

*C. R. Morrison*, for the defendants.

1. The oral agreement, if made, being wholly invalid, is not evidence to show the time of payment.

2. Evidence of the purpose for which Emerson presented the bills should have been admitted. The bills were presented. Emerson could not tell what he said when he presented them. If his purpose and intent in presenting them was that they might be paid, and if Norris so understood it, there was a sufficient demand. It was material therefore to prove the intent and understanding on both sides. Emerson having knowledge of such purpose and intent, so far as he was concerned, might declare it.

3. The jury were instructed that the landlord might waive a demand of rent, " and renew the former relation of landlord and tenant, by neglecting to give notice to

quit, and recognizing and treating the tenancy as still subsisting, and that the jury should inquire whether any demand made before March 3d, or at that time, was waived and the tenancy continued." The whole charge upon this most important point in the case, proceeds, as we submit, upon an entire misconception of the effect of a demand of rent under our statute. A demand for the rent does not put an end to the tenancy. The tenancy continues, notwithstanding the demand, until the termination of a legal notice to quit, unless it is sooner put an end to with the consent of both parties. Rev. Stat., ch. 207, sec. 1; 22 N. H. 13; 24 N. H. 225; *French* v. *Fuller*, 23 Pick. 104. Nor does the neglect to pay rent create any forfeiture of an estate. The landlord may at any time give a notice to quit. The only effect of the non-payment of the rent is to make a shorter notice answer than would otherwise be necessary. *Kimball* v. *Rowland*, 6 Gray 225; *Haseltine* v. *Colburn*, 31 N. H. 466.

4. And even where the act or omission of which the landlord complains, does work a forfeiture of an estate at the election of the landlord, mere neglect to proceed for the forfeiture, for a much longer time than existed in this case, is no waiver of his right. Taylor Land. & Ten., and cases cited; 1 Smith's Leading Cases 84; *Little* v. *Heaton*, 2 Ld. Raym. 750; *Rawson* v. *Little*, 11 Wend. 616; *Gray* v. *Blanchard*, 8 Pick. 284; *Lawrence* v. *Gifford*, 17 Pick. 366.

5. The instructions given were clearly erroneous, if the views above expressed are substantially correct, and were also calculated to mislead the jury upon a vital matter. The defendants were entitled to have the instructions prayed for, which are fully warranted by the authorities cited.

*Sawyer & Stevens*, for the plaintiff.

DOE, J. The evidence tending to prove that the parol agreement was for a letting of the stable for one year, but without any express agreement as to the time when the rent should be paid, was admitted specially and solely as bearing upon the question when the rent was to be paid, but not with a view to prove a lease for a year. The jury were allowed to find, from an express agreement as to the length of the term, an implied agreement as to the time of payment. It is no objection to evidence that it proves an inoperative agreement, when it is offered or admitted not to prove that agreement, but to prove something else, and the first exception is overruled.

No particular words are necessary to constitute a demand of rent. A demand may be made without words written or spoken. It is enough if both parties understand that a demand is made. No words and no acts can make a demand when there is no intention to make it. The intention may be manifested and conveyed by words or acts, but they are evidence of a demand only so far as they tend to show an intention or understanding. A landlord might repeat the words of an express demand in the presence of his tenant for other purposes than to demand money of him. A demand might be made upon a deaf tenant by signs understood by both parties, and the landlord would be allowed to show what they understood by the signs, and would not be restricted to evidence of what was said and done.

The understanding being material, not merely as evidence, but as the thing to be proved, may be shown by competent testimony. And when the intention of a person performing an act, is to be proved, and that person is a competent witness, there can be no reason why he should not testify directly to his intention as well as to his doing the act. To exclude such testimony would be to prohibit positive evidence as to one class of facts, and to allow the jury to find them only upon circumstantial

evidence. The intention of Emerson in presenting rent bills to the plaintiff, was a material fact in this case. It was a disputed question whether payment of the bills was demanded. If Emerson, without saying any thing, had intended that the plaintiff should understand from the presentment of the bills that payment was demanded, and if the plaintiff did so understand, then there was a demand. He might have presented them for information as to their amount, or as an exhibition of hand-writing, or in sport, or to annoy and insult the plaintiff, without any purpose of demanding payment, and without any understanding on the part of the plaintiff that payment was demanded ; and if there was no such purpose and no such understanding, there was no demand. Emerson's intention was best known to himself; was with him a matter not of opinion, inference or hearsay, but of consciousness, certainly, absolutely and peculiarly within his own knowledge. The court ruled that the defendants might show what Emerson said and did, but that the inquiry as to his purpose and intent was not competent, and the exception to this ruling must be sustained.

The testimony of Morrill, one of the defendants, as to the purpose of his acts upon the premises, would be admissible upon the same ground as the excluded testimony of Emerson, malice being a ground of exemplary damages, and the purpose of Morrill being therefore a material fact.

Where the damage for which an action is brought has resulted from misrepresentation of a fact by the defendant, and it is material to prove not only that the statement was false in fact, but also that the defendant knew it to be false, he, being a competent witness, may testify to his knowledge or ignorance of the falsity of the statement at the time he made it. In suits where the intention of the defendant is of the gist of the action, and must be shown to be malicious, not to affect the amount of damages but to entitle the plaintiff to recover any damages whatever,

there would seem to be no reason why the defendant, being a competent witness as to all other material facts, should not testify to his intention—the fact which is most material, and which he alone of all men is presumed certainly to know. And there can be no occasion for a different rule where exemplary damages may be given for malicious mischief and for aggravating circumstances of intended indignity, insult and outrage, and where the purpose and intent of the wrong-doer, apparently manifested in his acts, may be the principal and even the only ground of such damages.

A demand of rent may be waived, not only expressly, but also by a mutual understanding that it is waived, and a long delay in giving notice to quit, and payment of rent, might be evidence competent for a jury to weigh, to show that there was such an understanding. The instructions given to the jury concerning a renewal of the former relation of landlord and tenant, and recognizing and treating the tenancy as still subsisting, were probably understood by the jury merely as calling their attention to a waiver of demand by a tacit assent to the extension of the tenancy to another term, though they might have misled the jury, and seem not to have been essential to a proper understanding of the case.

*Verdict set aside.*